UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MATTHEW E. VASQUEZ,

    Plaintiff,

v.                                          Case No: 5:21-cv-489-WFJ-PRL

R.C. CHEATHAM, FNU RAMOS,
FNU LESTER, FEDERAL BUREAU
OF PRISONS and FNU VELASQUEZ,

    Defendants.

## ORDER

Before the Court is Plaintiff's motion titled "Emergency Plaintiff's Motion for Preliminary Injunction" docketed on October 19, 2021. (Doc. 3). In the Motion, Plaintiff complains about the conditions in the Special Housing Unit (SHU) at the United States Penitentiary II in Coleman, Florida. He asserts that he has been housed 23 to 24 hours a day in his cell in the SHU since May 11, 2021. *Id*. at 3. Plaintiff has a "long, well-documented history of bipolar disorder" and has attempted suicide six times in his lifetime. *See id*. at 27-30.

Plaintiff arrived at Coleman USP II in late 2019 and was assigned Defendant V. Velasquez as his case manager. *Id*. at 28. Plaintiff states he was recommended to "the Challenge Program" to address his mental health issues but Defendant Velasquez disregarded that recommendation and told Plaintiff his goal was to resubmit Plaintiff to the Special Management Unit ("SMU"). *Id*. at 6. Plaintiff classifies the SMU as "a

notoriously violent and deadly unit." *Id*. at 4.

On May 11, 2021, Plaintiff was involved in an altercation with another inmate that resulted in his placement in the SHU. Plaintiff was not screened by Psychology when he was sent to the SHU and "most times I feel suicidal and ask for help [Psychology] refuse to come speak to [him] in SHU." *Id*. at 30. During his stay in the SHU Plaintiff "became suicidal" and was pepper-sprayed, beaten and restrained. *Id*. at 9. Plaintiff states that he while in the SHU he has been denied video visitation, all incoming mail, publication, television, or radio. *Id*. at 10. Plaintiff asserts that SHU staff ignore and interfere with the prison psychologist's recommendations and "are not trained to deal with" mentally ill inmates. *Id* at 11. Instead, SHU staff harass, intimidate, and scream at them. *Id*. at 12. Finally, the warden has prohibited all SHU inmates from purchasing personal hygiene products. *Id*. at 14.

For relief, Plaintiff requests that the Court enjoin the BOP from transferring Plaintiff to the SMU and from denying SRO Hearings under 28 CFR 541.26 that are held out of his cell in a private area. Plaintiff requests that the Court order the BOP to "provide plaintiff a comprehensive diagnostic examination by an on-site psychiatrist in the [SHU] in a private setting," to "refer to its Office of Internal Affairs plaintiff's allegations regarding inmate Oliva … for a thorough investigation," to "recalculate plaintiff's Mental Health Care Level within 30 days of this evaluation by a psychiatrist consistent with P.S. 5310.16," to "cease denying reasonable opportunities to purchase soap, deoderant [sic], tooth paste, a toothbrush, shampoo to administrative detention inmates at USP Coleman II who have been in said status in excess of 14 days," to

2

"provide reasonable access to the media via reading materials such as a news paper or magazine in SHU to inmates housed in administrative detention," to "house administrative detention and disciplinary segregation cases separately in SHU," to "release plaintiff to the USP Coleman II Challenge Program upon completion of any existing term of disciplinary segregation," to "provide a mental health evaluation in all plaintiff's DHO proceedings prior to the DHO hearing," to "cease its practice of placing incoming inmate mail in its SHU property room, and shall deliver such mail directly to the addressee upon its delivery to SHU," to "cease denying plaintiff video visitation as provided for in the CARES Act of 2020," to "cease using chemical agents to subdue mentally ill inmates engaging in disruptive behavior that is the manifestation of their mental illness," to "perform an intake screening on all inmates admitted to SHU by a licensed psychologist within 72 hours to assess their mental state and mental health needs," to "immediately enjoin its current practice of ignoring recommendations from its psychologists regarding the conditions and treatment of mentally ill SHU inmates by its Warden, Associate Wardens, Captain and Lieutenants who currently overrule all psychologist recommendations," and to "assess all current SHU inmates mental state, diagnosis, if said inmate has been held in SHU longer than 30 days, and shall provide a detailed plan for transitioning all such inmates out of the SHU within 60 days to the Court." *Id*. at 21-24.

Injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, "is an 'extraordinary and drastic remedy,' and [the movant] bears the 'burden of persuasion.'" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247

(11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). To demonstrate entitlement to injunctive relief, a movant must show the following:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). With respect to the second prerequisite, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel*, 234 F.3d at 1176. The moving party must make a "clear showing" of "substantial," "actual and imminent" irreparable harm, as opposed to "a merely conjectural or hypothetical-threat of future injury." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Siegel*, 234 F.3d at 1176-77. The movant must clearly establish the burden of persuasion as to the four requisites. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

The decision to grant a preliminary injunction is vested in the "sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). Further, the purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit can be reviewed. *All Care Nursing Serv. v. Bethesda Mem'l Hosp.*, 887 F.2d 1535, 1537 (11th Cir. 1989).

A typical preliminary injunction is prohibitive in nature and seeks simply to maintain the status quo pending a resolution of the merits of the case. *Haddad v. Arnold,* 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010). When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes

a "mandatory or affirmative injunction" and the burden on the moving party increases. *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).[1] Indeed a mandatory injunction "'should not be granted except in rare instances in which the facts and law clearly favor the moving party.'" *Id.* (quoting *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958)); *see also Martinez v. Mathwes*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."). Accordingly, a plaintiff seeking such relief bears a heightened burden of demonstrating entitlement to preliminary injunctive relief. *See Verizon Wireless Pers. Commc'n LP v. City of Jacksonville, Fla.*, 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009) (quoting the Southern District of New York, "Where a mandatory injunction is sought, 'courts apply a heightened standard of review; plaintiff must make a clear showing of entitlement to the relief sought or demonstrate that extreme or serious damage would result absent the relief.'"); *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1196 (N.D. Ala. 2009).

Here, Plaintiff is not seeking to maintain the status quo. Instead, Plaintiff is asking the Court to interfere with the prison's administration, something the courts generally will not entertain. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) ("[T]he

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches … not the Judicial."). Additionally, Plaintiff is essentially asking the Court to compel Defendants to comply with Bureau of Prisons' Program Statements. If granted, the injunction would be nothing more than an "obey the law" decree which is unenforceable and disfavored. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1233 n.14 (11th Cir 2005); *Hughes v. JMS Dev. Corp.*, 78 F.3d 1523, 1531-32 (11th Cir. 1996); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-01 (11th Cir. 1999).

Further, Plaintiff must comply with Local Rule 6.02, Rules of the United States District Court for the Middle District of Florida and Federal Rule of Civil Procedure 65. These rules govern this Court's decision as to whether an injunction shall issue. Plaintiff has failed to comply with the Local and Federal Rules in drafting his Motion.

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff's "Emergency" motion for preliminary injunction (Doc. 3) is **DENIED**.

**DONE** and **ORDERED** at Tampa, Florida on October 25, 2021.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

Copies to: Unrepresented Parties