## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**MATTHEW E. VASQUEZ,**

     **Plaintiff,**

**v.**                                              **Case No: 5:21-cv-489-WFJ-PRL**

**R.C. CHEATHAM, et al.,**

     **Defendants.**

_____

## ORDER

Before the Court is Plaintiff Matthew E. Vasquez's Civil Rights Complaint (Doc. 1) filed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff is a federal prisoner proceeding *pro se*.

## I. Statutory Screening of Prisoner Complaints

Pursuant to 28 U.S.C. § 1915A(a), federal courts are obligated to conduct an initial screening of certain civil suits brought by prisoners to determine whether they should proceed. Upon review, a court is required to dismiss a complaint (or any portion thereof) in the following circumstances:

> (b) Grounds for Dismissal.–On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b). In addition, 28 U.S.C. § 1915(e) directs courts to dismiss actions which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read a plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972).

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

## II. Complaint

Plaintiff claims that while on suicide observation in 2020, he told Defendant Ramos that he wanted to commit suicide and Ramos responded, "I don't believe you,

prove it to me." (Doc. 1 at 9). Defendant Ramos directed Officer Wiggins to give Plaintiff clothing. *Id*. Plaintiff tore the shirt to use it as a makeshift ligature to hang himself. Officer Wiggins responded by spraying Plaintiff with oleoresin capsicum ("OC"). When Defendant Lester and Lieutenant Evans arrived, Wiggins was directed to spray Plaintiff a second time. Plaintiff voluntarily submitted to hand restraints. Defendant Lester, Wiggins and Evans escorted him from the medical department to the Special Housing Unit ("SHU") and intentionally slammed Plaintiff's head and face into steel doors and door frames leaving him bruised and with cuts. *Id*. at 9-10.

In the SHU, Plaintiff was placed in a waist chain that was connected to hand restraints and leg shackles. *Id*. at 10. Plaintiff claims the hand shackles totally restricted blood flow to his hands causing "excessive swelling, numbness, and immobility of the hands." *Id*. Plaintiff remained in those restraints for 20 hours without medical aid and without the ability to wash off the OC. Plaintiff claims Evans and Defendant Lester threatened to kill him if he filed a BP-9 on them. *Id*. at 10.

In May 2021, Plaintiff claims he wanted to file a PREA complaint against an inmate that threatened to rape him but was ignored by the psychology department. *Id*. Plaintiff and that inmate got into an altercation resulting in Plaintiff being placed in the SHU. Plaintiff complains about the conditions in the SHU, claiming he is being denied hygiene items, clean clothing, outdoor recreation, books, magazines, newspapers, televisions, educational programs, and nutritionally adequate meals. *Id*. Plaintiff claims there is not a psychologist to assist him and the other SHU inmates.

Plaintiff claims that Defendant Velasquez, his assigned case manager, calls him

3

a "crybaby" and urged Plaintiff to kill himself. *Id*. at 11. Plaintiff sought assistance from Defendant Velasquez to get enrolled in the USP-2 challenge program but was denied.

### III. Failure to State a Claim

#### A. Defendant Velasquez

Plaintiff alleges that he was denied access to the challenge program. An inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before. *McKune v. Lile*, 536 U.S. 24, 39–40 (2002) (rejecting a challenge by the inmate to expected demotion in custodial status classification). Accordingly, to the extent Plaintiff raises a due process claim against Defendant Velasquez, it must fail.

#### B. Defendants Federal Bureau of Prisons ("BOP") and Warden R. C. Cheatham

##### 1. Official Capacity

The availability of a cause of action against federal officials in their individual capacities for violations of federal constitutional rights was established in *Bivens*, 403 U.S. at 394-97. *Bivens* claims can be brought against federal officers in their individual capacities only; they do not apply to federal officers acting in their official capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). Moreover, *Bivens* does not extend to allow causes of action against federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471

(1994). Plaintiff sues Defendants BOP and Cheatham in their official capacities. (Doc. 1 at 2-3). Accordingly, Plaintiff fails to state a claim upon which relief may be granted.

### 2. Individual Capacity

It appears that Plaintiff names Defendant Cheatham based on the supervisory nature of his position without alleging facts that he had any personal involvement in violating his constitutional rights. The standard for which a supervisor is held liable is "extremely rigorous" - supervisors can be held liable when "the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)); *Corbett v. Trans. Sec. Admin*, 568 F. App'x 690, 697 (11th Cir. 2014). A causal connection may be shown by evidence of 1) "a custom or policy that results in deliberate indifference to constitutional rights"; 2) "facts that support an inference that the supervisor [ ] directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so"; or 3) "a history of widespread abuse that notified the supervisor of the need to correct the alleged deprivation…." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (citing *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007)).

Plaintiff does not allege that Defendant Cheatham personally participated in any wrongdoing against him. To the extent Plaintiff alleges that Defendant Cheatham instituted a policy of denying hygiene items, recreation, reading materials, educational

programs, and nutritionally adequate meals to inmates housed in the SHU, he has failed to demonstrate that the complained-of condition is "extreme" such that the condition "poses an unreasonable risk of serious damage to his future health or safety," and that "defendant prison officials acted with a sufficiently culpable state of mind with regard to the condition at issue." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation and citation omitted). Accordingly, Plaintiff fails to state a claim upon which relief may be granted.

## C. Defendant Lester

Plaintiff claims Defendant Lester used excessive and unnecessary force against him while he was handcuffed and being escorted. Plaintiff claims Defendant Lester intentionally and repeatedly slammed his head and face into steel doors and door frames.[1]

---

[1] "The plaintiff is the master of the complaint. The plaintiff selects the claims that will be alleged in the complaint." *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997). Plaintiff also claims he was sprayed with OC, was not allowed to decontaminate or wash off the OC, and was placed in restraints, in violation of this Eighth Amendment rights. However, Plaintiff either fails to name which Defendant individually participated in those acts or names a non-party to this action. The Court will consider Defendant Lester's participation as a single excessive force claim. *See Danley v. Allen,* 540 F.3d 1298, 1306 (11th Cir. 2008) (construing a spraying and subsequent confinement as a single excessive force claim where the complaint alleged as much), *overruled on other grounds as recognized by Randall v. Scott,* 610 F.3d 701, 709 (11th Cir. 2010).

Under *Bivens*, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights. *Bivens*, 403 U.S. 388. To state a *Bivens* claim, a plaintiff must allege that an individual acting under federal law deprived him of a right secured by the United States Constitution. *Id.* at 395-97. However, *Bivens*, unlike 42 U.S.C. § 1983, is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

The Supreme Court has made clear that extending *Bivens* is "disfavored judicial activity." *Id.* at 1857 (quotation omitted). Indeed, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68.

Given this reluctance, when determining whether there is an implied damages remedy under the Constitution, a federal court must engage in a two-step inquiry. First, a court must determine if the case presents a new *Bivens* context, meaning whether "the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Ziglar*, 137 S. Ct. at 1859. Meaningful differences may include, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of

potential special factors not considered in previous *Bivens* cases." *Id*. at 1860. Additionally, when determining if the case presents a new *Bivens* context, a court should keep in mind that "even a modest extension is still an extension." *Id*. at 1864.

Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389-90; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980).

Second, if the *Bivens* context is new, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court "has not defined the phrase 'special factors counselling hesitation.'" *Id*. But "[t]he necessary inference ... is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. Put differently, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id*. at 1858

### a. New Context

"The proper test for determining whether a case presents a new *Bivens* contest

is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id*. at 1860. "[E]ven a modest extension is still an extension." *Id*. at 1864.

In this case, the use of excessive and unnecessary force is different in a meaningful way from the previous *Bivens* cases decided by the Supreme Court concerning unreasonable search and seizures, sexual discrimination, and failure to provide medical attention. Further, this case involves a claim to which *Bivens* has not been extended. While the Court has extended *Bivens* to the Eighth Amendment in a medical care case, Bivens has not been extended to excessive force cases under the Eighth Amendment. *See Harrison v. Nash*, 2021 WL 2005489 at *2 (S.D. Miss. Apr. 26, 2021). And, judicial guidance differs across the various kinds of Eighth Amendment violations. Therefore, this is a new context which would require an extension of Bivens. As set forth above, "even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864.

### b. Special Factors

Because this case involves a new context, the court must consider whether special factors counsel against recognizing a *Bivens* remedy. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Ziglar*,

137 S. Ct. at 1865.

"[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. *Id.* at 1858. The court's focus is on maintaining the separation of powers: separation-of-powers principles are or should be center to the analysis. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Ziglar*, 137 S. Ct. at 1857). The only relevant threshold - that a factor "counsels hesitation" - is remarkably low. *See Hernandez v. Mesa*, 885 F.3d 811, 823 (5th Cir. 2018) (citing *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (en banc)).

A court's special factors "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857-58. To be considered a "'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858.

When a plaintiff seeks to extend *Bivens* to a new context, courts consider whether alternative remedies are already available because "if there is an alternative remedial structure present ..., that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 137 S. Ct. at 1858. If Congress has created "'any alternative, existing process for protecting the [injured party's] interest' that itself may

'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id*. (quoting *Wilkle v. Robbins*, 551 U.S. 537, 550 (2007)).

"'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid loose attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'" *Callahan v. Fed. Bureau of Prisons*, 965 F.3d at 520, 524 (6th Cir. 2020) (quoting *Ziglar*, 137 S. Ct. at 1865). That suggests a considered decision not to extend a damages remedy to excessive force claims.

The Supreme Court has never held that *Bivens* extends to Eighth Amendment excessive force claims. In fact, the Supreme Court has permitted only one "*Bivens* claim for prisoner mistreatment -specially for failure to provide medical care." *Ziglar*, 137 S. Ct. at 1855. The court must consider that the Supreme Court has stressed that any extension of *Bivens* to new factual scenarios is now a disfavored judicial activity. Further, as listed above, there are special factors weighing against such an extension in this case.  Therefore, the court should decline creating an implied damages remedy for plaintiff's excessive force claim.

For the reasons set forth above, *Bivens* does not extend to the facts of this claim, and Plaintiff lacks a cause of action. Therefore, Plaintiff's allegations fail to state a claim upon which relief may be granted.

### D. Defendant Ramos

"In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under the eighth or fourteenth amendment, the plaintiff must show that the jail official displayed *deliberate indifference* to the prisoner's taking of his own life." *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015) (emphasis in original) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989)). This is a difficult standard for a plaintiff to meet. *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990). Jail suicides are akin to a failure to provide medical care. As such, deliberate indifference has become the "barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested." *Id.*

To establish a defendant's deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Jackson*, 787 F.3d at 1353 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "[D]eliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.'" *Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1268-69 (11th Cir. 2005) (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). "A prison custodian is not the guarantor of a prisoner's safety." *Cagle v. Sutherland*, 334 F.3d 980, 989 (11th Cir. 2003) (quoting Popham, 908 F.2d at 1564).

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (rejecting assertion that "a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it."); *Snow*, 420 F.3d at 1270 (denying qualified immunity to jail officer, who was subjectively aware of the substantial risk of harm, and deliberately chose not to communicate that risk to others after his shift concluded or attempt to remedy the risk in any way).

Plaintiff claims that he had a "lengthy well-documented history of mental illness and suicide attempts" and was on suicide observation when Defendant Ramos arrived to evaluate his mental state. (Doc. 1 at 9). Plaintiff told Ramos that he wanted to commit suicide. Ramos allegedly told Plaintiff, "I don't believe you, prove it to me." *Id*. Ramos directed an officer to give Plaintiff clothing. As they were leaving the suicide watch area, Plaintiff "used the shirt to tear it into a ligature to hang himself" but was halted by an officer spraying him with OC. *Id*.

Plaintiff has failed to state a claim for deliberate indifference. This standard is only met if there was a "strong likelihood, rather than a mere possibility," that self-infliction of harm would result. Here, Ramos, a psychologist evaluating Plaintiff's mental state, had subjective knowledge of Plaintiff's statement and rejected it. However, Plaintiff has failed to state that Ramos's conduct, directing an officer to provide him clothing, was more than mere negligence.

13

## IV. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's claims are **DISMISSED** pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

2. To the extent that he wishes to cure the deficiencies of his Complaint, he is directed to file an Amended Complaint on the standard civil rights complaint form within **21 days** of the date of this Order. The failure to file the Amended Complaint within the allotted time will result in the dismissal of this case without further notice.

**DONE** and **ORDERED** in Tampa, Florida on December 8, 2021.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Unrepresented Party

14